CITY OF ADRIAN v STRAWCUTTER

Docket No. 241098. Submitted October 16, 2003, at Detroit. Decided October 21, 2003, at 9:05 A.M.

Rickerd D. Strawcutter was found responsible by a district court for speeding following a formal hearing in which evidence of radar speedmeter readings was admitted. At the hearing, the officer who issued the citation, when asked about servicing performed on the speedmeter, testified that he did not know what the manufacturer's servicing requirements were, that the Michigan Speed Measurement Task Force recommended no servicing for the speedmeter, and that the speedmeter had not been serviced for more than a year. On appeal, the Lenawee Circuit Court, Timothy P. Pickard, J., reversed, ruling that evidence of the speedmeter readings should not have been admitted in light of *People v Ferency*, 133 Mich App 526 (1984), which requires for the admission of speedmeter readings that, among other things, the speedmeter be serviced by the manufacturer or other professional as recommended. The city of Adrian appealed.

The Court of Appeals *held*:

The requirement at issue in this case only mandates service as recommended and does not preclude the possibility that no service may be recommended. As explained in *Ferency*, servicing recommendations are not limited to those from the manufacturer and may be made by an agency or organization with a demonstrable expertise. The Michigan Speed Measurement Task Force is such an agency. Accordingly, the *Ferency* requirement was met in this case inasmuch as no servicing was recommended and, consistent with the recommendation, none was performed.

Reversed.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *Irving C. Shaw, Jr.*, Prosecuting Attorney, and *Gregory W. Grover*, Assistant Prosecuting Attorney, for the people.

Rickerd D. Strawcutter, in propria persona.

Before: WHITBECK, C.J., and JANSEN and MARKEY, JJ.

PER CURIAM. The city of Adrian appeals by leave granted the circuit court order reversing the district court's finding that defendant Rickerd Strawcutter was responsible for a speeding ticket. We reverse.

### I. BASIC FACTS AND PROCEDURAL HISTORY

Deputy Sheriff Carl Polan cited Strawcutter on October 23, 2001, for traveling forty miles an hour in a thirty-mile-an-hour zone. At a formal hearing, Strawcutter elicited testimony from Officer Polan, who had been certified as an expert, indicating that the radar speedmeter had not been serviced for approximately thirteen months and that he was not aware of any manufacturer servicing guidelines. On appeal, the circuit court reversed on the ground that Officer Polan did not know what the manufacturer's service requirements were and therefore failed to comply with the requirements of *People v Ferency*.[1] The circuit court denied reconsideration, and this Court granted leave to appeal.

### II. MEETING THE *FERENCY* REQUIREMENTS

#### A. STANDARD OF REVIEW

This appeal concerns interpretation of a guideline that this Court set forth in *Ferency*, as well as certain conclusions of law based on essentially uncontested facts. All issues on appeal are, therefore, legal in nature and we review them de novo.[2]

---

[1] *People v Ferency*, 133 Mich App 526; 351 NW2d 225 (1984).

[2] *People v Watkins*, 468 Mich 233, 238; 661 NW2d 553 (2003).

B. SERVICING THE SPEEDMETER

*Ferency* imposes certain requirements on the admission of radar speedmeter readings into evidence. One of those requirements is that "the speedmeter be serviced by the manufacturer or other professional as recommended."[3] The district court concluded that, because Officer Polan had followed the recommendations of the Michigan Speed Measurement Task Force, this requirement was met. However, the circuit court disagreed. Because Officer Polan did not know what the manufacturer's requirements were, the circuit court reversed the district court's finding of responsibility.

Unlike other requirements imposed by *Ferency*, the requirement at issue here does not mandate any specific actions. For example, *Ferency* also requires "that the speedmeter be retested at the end of the shift in the same manner that it was tested prior to the shift."[4] That is an affirmative requirement. The requirement at issue here only mandates service *as recommended.* This does not preclude the possibility that *no* service may be recommended. Further, servicing recommendations are not limited to those of the manufacturer. We explained in *Ferency* that these guidelines

> can be met by a showing that the issuing officer followed the recommendations contained in the Interim Guidelines and other recommendations issued by the Office of Highway Safety Planning. We recognize, also, that there may exist other agencies or organizations with a demonstrable expertise in this area which promulgate similar guidelines

---

[3] *Ferency, supra* at 544.
[4] *Id.*

that may be used to show that the above guidelines have been met.[5]

The Michigan Speed Measurement Task Force is an agency with demonstrable expertise. Officer Polan testified that, on the basis of his training and instruction, the Michigan Speed Measurement Task Force did not recommend any servicing for the speedmeter unit. Therefore, we conclude that Officer Polan complied with the relevant servicing requirements under *Ferency*: no servicing was recommended and no servicing was performed.

Reversed.

---

[5] *Id.*